**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carl William PURSLEY, Jr.,**
**Defendant–Appellant.**

**No. 05–1428.**

United States Court of Appeals, Tenth Circuit.

Jan. 11, 2007.

Marci A. Gilligan, Richilano & Gilligan, P.C., Denver, CO, (Patrick L. Ridley and Robert T. Fishman, Ridley McGreevy Weisz P.C., Denver, CO, with her on the brief) for Defendant–Appellant.

James C. Murphy, Assistant United States Attorney (William J. Leone, United States Attorney, and Matthew T. Kirsch, Assistant Untied States Attorney, with him on the brief), Office of the United States Attorney, Denver, CO, for Plaintiff–Appellee.

Before MURPHY, ANDERSON, and TYMKOVICH, Circuit Judges.

TYMKOVICH, Circuit Judge.

## I. Introduction

While jailed in a Colorado state prison, Carl William Pursley was indicted by the United States for tax fraud. The government alleged that Pursley filed fraudulent tax returns on behalf of himself and other prisoners and received refund payments as a result. He was subsequently convicted by a federal jury on one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of aiding and abetting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2).

On appeal, Pursley raises four claims challenging his conviction and sentence. The district court erred by (1) failing to dismiss the case due to violations of the Interstate Agreement on Detainers Act; (2) refusing to sever his trial from that of a co-defendant; (3) allowing the jury verdict to stand despite insufficient evidence to support the conspiracy conviction and, relatedly, contributing to jury confusion by improperly instructing them on the conspiracy count; and (4) violating the Double Jeopardy Clause while imposing consecutive sentences for different crimes that were supported by the same evidence.

Taking jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM.

## II. Factual Background

Carl Pursley and his co-defendant, William Wardell, were indicted by the United States on August 20, 2003, on various counts of tax fraud. Pursley was specifically charged with conspiring to defraud the Internal Revenue Service by assisting in the preparation of false tax returns for the purpose of fraudulently obtaining refunds based on the Earned Income Credit. At the time the federal indictment was filed, Pursley and Wardell were prisoners of Colorado, serving sentences on prior convictions.

To obtain his availability for trial, the United States lodged a detainer against Pursley on August 21, 2003, and obtained custody by filing a writ of habeas corpus *ad prosequendum* on October 9, 2003. Pursley was transferred to another facility under federal control where he remained for twenty-two months while he awaited trial on the tax fraud charges. During that period, Colorado filed a new indictment against Pursley in an unrelated criminal case. Accordingly, Colorado sought his presence in state court for preliminary proceedings. On at least two occasions, the state filed writs of habeas corpus *ad prosequendum* to obtain temporary custody to escort Pursley to court. Each time, he was returned to federal prison the same day. At no time was Pursley returned to a Colorado corrections facility to resume serving his initial state prison sentence.

On April 25, 2005, Pursley moved to dismiss the federal indictment with prejudice on the ground that the United States had violated the "anti-shuttling" provision of the Interstate Agreement on Detainers Act in releasing him to the temporary custody of Colorado. The district court denied his motion, and the case proceeded to trial. Before it began, Pursley moved to have his trial severed from that of his co-defendant, alleging that they would present antagonistic defenses. The district court denied this motion as well.

On May 25, 2005, a federal jury convicted Pursley on one count of conspiracy to defraud the United States and two counts of aiding and abetting the preparation of false tax returns. He was sentenced to 96 months incarceration—60 months imprisonment on the conspiracy count to be served consecutively with 36-month concurrent sentences for each count of aiding and abetting. He appeals both his conviction and sentence.

## III. Discussion

Pursley raises four issues on appeal. We address each in turn.

### A. Interstate Agreement on Detainers

Pursley argues the United States violated the Interstate Agreement on Detainers (IAD or Agreement), 18 U.S.C.App. § 2 [hereinafter IAD]; Colo. Rev.Stat. § 24–60–501 (2004), by transferring him from a state to federal prison and then allowing state officials to escort him to state proceedings on new state charges while he was in federal custody. Accordingly, he contends that the district court erred by failing to dismiss the federal indictment and that we should reverse his conviction.

The IAD creates among its contracting parties uniform procedures for lodging and executing a detainer, "a legal order that requires a State in which an individual is currently imprisoned to hold that individual ... so that he may be tried by a different State for a different crime." *Alabama v. Bozeman,* 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001).

For purposes of the IAD, the state in which a prisoner is initially serving a sentence is classified as the "sending state" (here, Colorado), and the state that subsequently indicts the prisoner and obtains custody is the "receiving state" (here, the United States).[1] IAD, Art. II(b)-(c). The Agreement "provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State" and "seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Bozeman,* 533 U.S. at 148, 121 S.Ct. 2079. The Agreement is based on the premise that prison treatment and rehabilitation programs are negatively impacted when a prisoner is indicted and transferred to a new jurisdiction and then returned to the original place of imprisonment before trial is had on the new charges. *See* IAD, Art. I.

The Agreement authorizes transfer of a prisoner from a sending state to a receiving state as follows:

> The appropriate officer of the jurisdiction in which an untried indictment ... is pending [i.e., the receiving state] shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated [i.e., the sending state].

*Id.* at Art. IV(a). The Agreement protects the prisoner from excessive transfers through the so-called "anti-shuttling" provision, which states,

> If trial is not had on any indictment ... contemplated hereby prior to the prisoner's being returned to the original place of imprisonment to article V(e) hereof, such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

*Id.* at Art. IV(e). Accordingly, by its express terms, the IAD is violated under two conditions—when a prisoner, who is serving a sentence in the sending state and indicted by the receiving state, is (1) transferred to the receiving state based on its lodging a detainer against him and requesting custody, *id.* at Art. IV(a), and then (2) returned to the "original place of imprisonment" before standing trial on the untried indictment, *id.* at Art IV(e).

In this case, the first condition of an IAD violation was clearly met. While serving his sentence in Colorado state prison, Pursley was indicted by the United States, which lodged a detainer against him and, by means of a writ of habeas corpus *ad prosequendum,* obtained custody and transferred him to a federal facility. *See United States v. Mauro,* 436 U.S. 340, 348, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (holding the combination of lodging a detainer and obtaining custody by means of a writ of habeas corpus *ad prosequendum* triggers application of the IAD).[2]

---

1. The United States and Colorado are party "States" to the Agreement. IAD § 2; Colo. Rev.Stat. § 24–60–501 (2006),

2. The government contends that because Colorado only filed a writ of habeas corpus *ad prosequendum* to obtain custody over Pursley from the federal government, the IAD is not implicated. While the Supreme Court has held that a writ of habeas corpus *ad prose-*

quendum by itself does not trigger the IAD, see *Mauro,* 436 U.S. at 349, 98 S.Ct. 1834, the IAD was *already* triggered by the federal government's (i.e., the receiving state's) actions in this case and the anti-shuttling provision is thus applicable. The government's argument would only have relevance if the federal government was the sending state.

The principal issue here is whether the second condition of an IAD violation was met. The prosecution argues Pursley was never "returned to the original place of imprisonment" within the meaning of the IAD because he was never sent back to a Colorado prison. Pursley objects to this literal reading of the text and argues that the anti-shuttling provision be interpreted to include any type of custody over the prisoner by the sending state.

Pursley argues that the Supreme Court in *Alabama v. Bozeman* interpreted the IAD to require dismissal of pending charges by the receiving state when a prisoner is placed in the custody of the sending state, even in circumstances where a prisoner's custody is of short duration.

In that case, the prisoner, Bozeman, was serving time in a federal prison when Alabama indicted him on an unrelated crime. *Bozeman*, 533 U.S. at 151, 121 S.Ct. 2079. Alabama lodged a detainer against him and subsequently obtained custody over him. The state then transported him approximately 80 miles to a county jail, where he spent the night before appearing for his arraignment the next morning. He was returned to federal prison that evening and resumed serving his original sentence.

At the outset, the Supreme Court acknowledged, "Alabama does not deny a violation of Article IV(e) as *literally* interpreted, for it concedes that its officials 'returned' Bozeman to his 'original place of imprisonment,' before Bozeman's county court 'trial' was 'had.'" *Id.* at 152, 121 S.Ct. 2079 (emphasis in original). The Court rejected Alabama's argument that spending one night in state prison constituted only a "de minimus" or "technical"

violation. *Id.* at 153, 121 S.Ct. 2079. Rather, the Court reasoned, "*every* prisoner arrival in the receiving State, whether followed by a very brief stay or a very long stay in the receiving State, triggers IV(e)'s 'no return' requirement." *Id.* at 154, 121 S.Ct. 2079 (emphasis in original). In other words, Article IV(e)'s anti-shuttling provision applies *whenever* a prisoner is provided to a receiving state pursuant to a detainer. The length of the prisoner's custody by the receiving state has no bearing on the operation of the "no return" requirement. Accordingly, the Court concluded, the Alabama charges should have been dismissed.

Pursley's attempt to compare his case to *Bozeman* is unpersuasive because he was not "returned to [his] original place of imprisonment" under Article IV(e). In *Bozeman,* the prisoner was serving time in a federal penitentiary under a federal sentence. After his short foray into state court and prison pursuant to a detainer, Bozeman was returned to the same federal prison to resume serving his original federal sentence. The Supreme Court has held that this is a clear violation of Article IV(e).[3] In this case, Pursley was never returned to Colorado to resume serving his original state sentence. Instead, his only trip back into Colorado state jurisdiction was to answer a *third* set of state charges unrelated to his original sentence or federal charges. He never was transferred to the Colorado Department of Corrections to begin anew his service of his original state sentence. Furthermore, the one-day excursion to the Colorado state courthouse for arraignment was only by chance in Colorado, the state of his original imprisonment. If any other state, such

---

3. Pursley's reliance on *United States v. Kelley,* 300 F.Supp.2d 224 (D.Mass.2003), is equally unavailing considering the district court in that case also found the receiving state shuttled the defendant back to the sending state to resume serving his original sentence prior to trial being had. *Id.* at 233. This is not the case here.

as Wyoming, had asked the federal government to provide Pursley for a one-day arraignment under similar circumstances, we do not see how this would have violated the anti-shuttling provision.

■ We note that our interpretation is supported by the plain language of the anti-shuttling provision and the IAD's purpose. First, Article IV(e) applies when the prisoner is "*returned* . . . to the original place of imprisonment pursuant to article V(e)." IAD (emphasis added). Article V(e) provides that, "[a]t the earliest practical time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State." *Id.* Read together, these words suggest that the prisoner must be sent *back* to recommence serving his original sentence to trigger the anti-shuttling provision. Under Article V(e), a prisoner should be returned to the sending state to resume his original sentence following the disposition of the receiving state's trial. Article V(e), on its face, does not contemplate other reasons to send a prisoner back to the sending state.

■ Second, the purpose of the IAD's anti-shuttling provision is to minimize the uncertainties attendant with outstanding charges which interfere with a prisoner's rehabilitation and treatment programs and to encourage the expeditious and orderly disposition of such charges. *See* IAD, Art. I. As we have said, Congress did not want prisoners to "have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction." *United States v. Wilson,* 719 F.2d 1491, 1494 (10th Cir. 1983). The mere temporary transfer of a prisoner to a different jurisdiction to answer pending charges while in the custody of a receiving state does not implicate these concerns so long as it does not impermissibly lengthen a prisoner's stay in the receiving state.[4] Where a transfer is of short duration and does not interrupt trial proceedings in the receiving state in violation of the IAD's other provisions, as is the case here, a prisoner spends no additional time away from the sending state and, thus, there can be no impact on a prisoner's rehabilitative programs and treatment in the sending state. On the other hand, the expeditious resolution of untried charges in a different jurisdiction, such as the third set of Colorado charges Pursley faced, is fully consistent with the purposes of the IAD.

For these reasons, we conclude that the IAD's anti-shuttling provision is not triggered by the circumstances presented here.[5]

**B. Trial Severance**

■ Pursley next argues the district court committed reversible error by failing

---

4. A receiving state must commence trial on untried indictments within one hundred twenty days from the arrival of the prisoner. IAD, Art. IV(c).

5. The government alternatively argues that Pursley waived his IAD argument by failing to raise it before the pre-trial motions deadline had passed. Pursley responds by contending that this issue is jurisdictional and non-waivable. We had not addressed whether violations of the IAD constitute jurisdictional claims on direct appeal. Nevertheless, we have stated, "Absent special circumstances, violations of the [IAD] are not grounds for collateral attack on a federal conviction and sentence" because "rights created by the [IAD] are statutory, not fundamental, constitutional, or jurisdictional in nature." *Greathouse v. United States,* 655 F.2d 1032, 1034 (10th Cir.1981). Because we have concluded the government's conduct did not implicate the IAD in this case, we need not answer whether violations of its provisions may be waived.

to grant his motion to sever his trial from that of his co-defendant, Wendel Wardell. He contends severance was necessary because the two defendants had planned to present antagonistic defenses and the joint trial precluded him from fully pursuing his theory of defense.

 When considering a motion for severance, a trial court engages in a three step inquiry. First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.1989). Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Peveto*, 881 F.2d at 857. Where the trial court ultimately denies severance, its decision will be reversed only where the defendant has demonstrated an abuse of discretion. *United States v. Hayes*, 861 F.2d 1225, 1231 (10th Cir.1988).

According to Pursley, his theory of defense at trial was that he never prepared or assisted in the preparation of the relevant tax returns. He hoped to persuade the jury that (1) although funds were deposited in his account and spent, (2) he was not aware of how the money arrived,

(3) he did not have any knowledge of tax returns filed in his name, nor (4) was he ever employed by Cimmaron Farms, the company to which his income was attributed on the returns. Wardell's defense, on the other hand, was that the tax forms were legitimate—that Pursley had participated in their preparation, had indeed been employed by Cimmaron Farms, and was properly entitled to receipt of Earned Income Credit funds. Thus, while Pursley merely argued no crime was committed *by him*, Wardell maintained no crime was committed *at all*.

Applying these factors, we conclude the district court did not abuse its discretion in declining to sever the trial. Even though Pursley could establish that the pair's defenses were mutually exclusive, we find no actual prejudice to Pursley under the second factor.

 We are satisfied that Pursley's and Wardell's defenses were sufficiently exclusive and antagonistic under the first factor.[6] Defenses are mutually antagonistic if "the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994). In other words, defendants must show that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one · defendant tends to establish the innocence of the other." *Peveto*, 881 F.2d at 857 (holding mutually exclusive defenses where one defendant claimed to be preparing to be an informant and invited the other defendant, a purported drug dealer, to his house to gather information, while

---

**6.** The district court found that Pursley's and Wardell's defenses were not mutually exclusive. Dist. Order, vol. I, doc. 643, at 2–3. In doing so, we believe that the district court conflated the first "mutually exclusive" factor

and the second "prejudice" factor. We find that the district court's analysis is better placed under considerations of prejudice, rather than on antagonism.

the other defendant claimed to be innocently at the house and held against his will by the first defendant).

A jury could not simultaneously believe Pursley's and Wardell's theories of defense. Pursley either worked at Cimmaron Farms or he did not. He either participated in the preparation and filing of tax returns or he did not. If the jury believed that Pursley had no knowledge of the tax refunds and had no part in Cimmaron Farms, then it would necessarily have to disbelieve Wardell's story that he and Pursley were legitimately entitled to file tax refunds based on their employment by Cimmaron Farms. Pursley's legitimate participation in the Cimmaron Farms enterprise was a core element of Wardell's defense theory. Without it, Wardell's defense would simply collapse, casting serious doubts on Wardell's claim of innocence. This is simply not a case where "the jury could have believed all of Defendants' theories and acquitted all of them." *See United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994) (finding no mutual antagonism). Accordingly, we find these defenses are sufficiently antagonistic under the first factor.

Nevertheless, Pursley has failed to demonstrate prejudice under the second factor. To establish prejudice, a defendant must point to a "specific trial right" that was compromised or show the jury was "prevent[ed] ... from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933; *see also United States v. McClure*, 734 F.2d 484, 488–89 (10th Cir.1984). Pursley argues prejudice must be presumed because "[w]hen mutually exclusive defenses are presented there is a chance that the jury will infer from the conflict the guilt of both parties." *Peveto*, 881 F.2d at 857. Pursley contends that, on this basis, his defense was less likely to be successful in a joint trial than a severed trial and, because of this, he opted not to present certain evidence at trial.

We are not persuaded that this alone will constitute prejudice for purposes of trial severance. "[I]t is well settled that defendants are not entitled to severance merely because they may have a *better chance* of acquittal in separate trials." *Zafiro*, 506 U.S. at 540, 113 S.Ct. 933 (emphasis added); *see also McClure*, 734 F.2d at 488 ("We have ... held that severance is not required simply because separate trials might have offered a better chance for acquittal to one or more of the accused."). Despite their differing theories of defense, nothing prevented Pursley from presenting evidence to support his theory even if it was inconsistent with Wardell's defense.

Second, while Pursley's theory may establish prejudice to Wardell, it did not necessarily prejudice Pursley's defense. As the district court noted in denying the severance motion,

> Both Pursley's and Wardell's proposed theories of defense tend to exonerate Pursley of wrongdoing. Under Pursley's theory, he had no knowledge of or involvement in the alleged scheme to defraud the government by filing false tax returns. Under Wardell's theory, the tax returns filed in Pursley's name were not fraudulent. If the jury believes either theory, it cannot find Pursley guilty of tax fraud.

Dist. Order, vol. I, doc. 643, at 2–3. Pursley's problem in the case was the lack of evidence to support his theory of defense, not his misfortune of trial with Wardell.

We therefore agree with the district court that Pursley cannot demonstrate prejudice from the failure to sever the trial.

■ Pursley also argues this court should not defer to the district court's discretion here because it failed to explicitly engage in the third step of our inquiry—weighing prejudice to the defendant against considerations of judicial economy. Yet, the district court found no prejudice at all, leaving nothing to balance in this step.[7]

In sum, the district court's decision is supported by the facts of this case and, in any event, does not warrant a conclusion that it abused its discretion in trying Pursley and Wardell together.

## C. Sufficiency of Evidence and Jury Instruction on Conspiracy Charge

Pursley next claims that the jury's verdict on the conspiracy count should be overturned because (1) the evidence was insufficient to support the verdict, and (2) the jury instruction on the conspiracy charge misled the jury.

■ *(1) Sufficiency of the Evidence.* Where a defendant claims the evidence was insufficient to convict, we examine the record in the light most favorable to the government and will only reverse where, based on the direct and circumstantial evidence presented and all reasonable inferences and credibility determinations drawn therefrom, no reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Small,* 423 F.3d 1164, 1182 (10th Cir.2005); *United States v. Pedraza,* 27 F.3d 1515, 1524 (10th Cir. 1994).

■ To demonstrate conspiracy, the government must prove "(1) agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged co-conspirators." *United States v. Johnson,* 12 F.3d 1540, 1545 (10th Cir.1993). The charges were based on nineteen tax returns, including three filed in Pursley's name, two filed in Wardell's name, and one filed in the name of Cimmaron Farms, the ostensible employer of Pursley (at least, according to his tax returns). The remaining thirteen returns were filed in the names of nine inmates imprisoned at the same jail as Pursley and Wardell. Pursley contends, although acknowledging the existence of evidence that he had participated in some of the acts included in the conspiracy, the government nevertheless did not prove he "participated in the broad, single conspiracy charged in the indictment." Aplt. Br. at 8. Instead, he argues the government established his connection to Wardell but failed to establish any connection with the remaining inmates. Thus, he concludes he cannot be convicted for a conspiracy that includes the filing of *all* nineteen tax returns.

■ Pursley's argument appears to be based on one of two premises, both of which are false. One possibility is that Pursley is assuming all individuals whose names were listed on the false tax returns were co-conspirators. Accordingly, be-

---

7. Even assuming Pursley could successfully demonstrate prejudice, severance would not be compelled because "the tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933; *see also United States v. Scott,* 37 F.3d 1564, 1579–80 (10th Cir.1994). "The decision to grant severance and order separate trials is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *Hayes,* 861 F.2d at 1231 (internal quotations omitted). Particularly "in a conspiracy trial it is preferred that persons charged together be tried together." *United States v. Ray,* 370 F.3d 1039, 1045 (10th Cir.2004). Consequently, "[t]he defendant's burden to show an abuse of discretion is a difficult one." *Hayes,* 861 F.2d at 1231.

cause the evidence at trial tended to show Pursley's association with Wardell but not with the nine inmates listed on the remaining tax returns, he could be arguing the government failed to prove his interdependence with those nine individuals. Nevertheless, only Pursley and Wardell were charged with conspiracy. The flaw here is that the government did not allege a broader conspiracy involving additional co-conspirators. It only charged Pursley and Wardell with conspiring to file numerous false returns involving other inmates.

■■■ Alternatively, Pursley's argument could be that direct evidence showing a connection between himself and each of the nine inmates listed on the tax returns was necessary for a conviction. He could be contending that such a showing is required for a reasonable jury to believe his involvement in the preparation of the first six tax returns (for which he concedes evidence exists) extended to the preparation of the remaining thirteen tax returns. Such an argument is wrong. It is well established that the government need not prove its case by direct evidence alone. *See, e.g., United States v. Young*, 954 F.2d 614, 618 (10th Cir.1992) ("Because criminal conspiracies by their nature are generally secret, often carefully concealed and may even be unarticulated, conspiracy may be found based solely upon circumstantial evidence.").

Here, the government presented direct evidence of his participation in the preparation of some of the false tax returns (e.g., arrival of funds in his bank account) and circumstantial evidence of his participation in the preparation of the remaining false tax returns. The fact that some evidence was circumstantial does not bar a reasonable jury from convicting him as to the conspiracy alleged in the indictment. Nor would it be necessary to prove he performed overt acts in furtherance of each aspect of the conspiracy so long as the government sufficiently proved that he conspired with Wardell in the tax fraud scheme and at least one of them engaged in one overt act. *See United States v. Dago*, 441 F.3d 1238, 1242 n. 1 (10th Cir. 2006) (finding that the overt act requirement of 18 U.S.C. § 371 is satisfied by "any act to effect the object of the conspiracy").

We, accordingly, hold that a reasonable jury could have found Pursley guilty of conspiracy beyond a reasonable doubt.

*(2) Jury Instructions.* Pursley also argues the district court erred in failing to provide proper jury instructions on conspiracy. He contends the instructions were confusing because they failed to distinguish between the portion of the charged conspiracy upon which the government had direct evidence (preparation of tax returns listing the names and affiliates of Pursley and Wardell) and the remainder of the conspiracy upon which the government had only circumstantial evidence (the remaining tax returns listing the names of additional inmates). We perceive no incongruence between the charged and proven conspiracy. Likewise, we find no instruction is necessary to parse whether a particular allegation is supported by direct or circumstantial evidence.

In sum, the evidence presented at trial was sufficient to support the jury's conviction, and the jury was properly instructed by the district court.

## D. Double Jeopardy

■■■ Finally, Pursley argues that his sentence is unlawful because the district court violated the Double Jeopardy Clause of the Fifth Amendment by imposing consecutive sentences on offenses that were proven by identical facts. The Constitution provides that no person shall "be subject to the same offense to be twice put in

jeopardy of life or limb." U.S. CONST., amend. V. Pursley contends that the same evidence supports his convictions (1) for conspiracy, and (2) for aiding and abetting the preparation of false tax returns and, therefore, concludes that "there is no practical or substantive distinction" between the two crimes in this case. Aplt. Br. at 26–27.

■ At the outset, we note that this issue was not raised below. Because this question was not presented to the district court, we apply a plain error standard of review. *United States v. Battle,* 289 F.3d 661, 665 (10th Cir.2002). Plain error "occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lopez–Flores,* 444 F.3d 1218, 1222 (10th Cir.2006).

■ Pursley's argument fails the first step because the district court committed no error. In reviewing a double jeopardy claim, the case law is clear, "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied [for double jeopardy purposes] is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Malone,* 222 F.3d 1286, 1293 (10th Cir.2000). When each offense requires proof of a fact not essential to the other, the charges are not identical and the accused can be charged, tried and convicted of both offenses even though the charges arise out of the same acts. *Goldsmith v. Cheney,* 447 F.2d 624, 627 (10th Cir.1971). Consequently, we look to the elements of the two crimes for which Pursley was convicted to determine whether a double jeopardy violation exists.

■ Conspiracy and aiding and abetting a crime are different criminal acts. *Goldsmith,* 447 F.2d at 628 (finding no double jeopardy violation after prosecutions for both offenses). It is "well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes because the essence of a conspiracy charge is an agreement to commit a substantive offense." *United States v. Johnson,* 977 F.2d 1360, 1371 (10th Cir.1992) (internal quotations omitted). Pursley was charged with conspiracy to commit tax fraud which requires "a conspiracy, agreement, or understanding to violate the law ... by two or more persons[.]" Instruction No. 19, vol. I, doc. 676. Thus, the crime of conspiracy is completed when an agreement has been made and an overt act to further the unlawful design has been performed. *Goldsmith,* 447 F.2d at 628. The substantive offense of aiding and abetting, in contrast, requires no agreement to commit the unlawful act. "The epitome of an accessory charge is to aid, counsel, or assist another in the commission of a criminal act; it does not depend upon an agreement or conspiracy to perform that act." *Id.*

Pursley nonetheless contends that a conviction for aiding and abetting in this case necessarily requires an agreement. That contention is incorrect. The elements of aiding and abetting require that Pursley "aided in, assisted in, procured, counseled, or advised" in the filing of tax returns; that the return falsely stated material information; and that Pursley knew of the falsity and acted willfully. *See* Instruction No. 31, vol. I, doc. 676.[8] None of these elements demand proof that he entered into a knowing agreement with others to commit the crime. In this case, the jury was instructed that, "It is not necessary that the government prove that the falsity

8. The entire jury instruction read,

In order to sustain its burden of proof for

or fraud [involving the tax return] was with the knowledge or consent of the person authorized or required to present such return." *Id.* This is consistent with our case law stating that an agreement is not an element of the crime of aiding and abetting. *See, e.g., Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954) ("Aiding, abetting and counseling are not terms which presuppose the existence of an agreement."); *Goldsmith,* 447 F.2d at 628. While Pursley and Wardell may have acted in concert in committing tax fraud, the convictions for aiding and abetting do not necessarily require agreement. The convictions, therefore, do not run afoul of double jeopardy.

In sum, even though Pursley's multiple convictions arose from the same criminal course of action, each crime required proof of a fact not required to convict for the other crime. Accordingly, we find no error in the district court's order of consecutive sentences for the different crimes.

## IV. Conclusion

For the foregoing reasons, Pursley's convictions and sentences are AFFIRMED.

the crime of aiding and abetting the preparation or presentation of false tax returns against defendant PURSLEY as charged in Counts 5 and 6 of the indictment, ... the government must prove each and all of the following five (5) essential elements beyond a reasonable doubt:

(1) That defendant PURSLEY aided in, assisted in, procured, counseled, or advised the preparation or presentation of a return as described in the indictment ... in connection with any matter arising under the internal revenue laws; and

(2) That this return falsely stated information as described in the indictment, ...; and

(3) That defendant PURSLEY knew that one or more of the statements in the return was false; and

(4) That the false statement was material; and

(5) That defendant PURSLEY acted willfully.

It is not necessary that the government prove that the falsity or fraud was with the knowledge or consent of the person authorized or required to present such return.

Instruction No. 31, vol. I, doc. 676.